Appeal of J. L. KELSO CO.                    Docket No. 2482.

The taxpayer is not a personal-service corporation.

Submitted April 23, 1925; decided May 27, 1925.

*Philip Nichols, Esq.,* for the taxpayer.
*Edward C. Lake, Esq.,* for the Commissioner.

Before GREEN and LANSDON.

This appeal is from a determination by the Commissioner of additional income and profits taxes in the amount of $52,268.24 for the fiscal years ended March 31, 1919, 1920, and 1921, respectively. The sole question at issue is the right of the taxpayer to personal-service classification. From the allegations of the petition admitted by the Commissioner and the oral and documentary evidence adduced at the hearing, the Board makes the following

FINDINGS OF FACT.

1. The taxpayer is a Massachusetts corporation organized in 1905. Its principal place of business is at No. 1, Union Wharf, Boston, Massachusetts, where it is engaged in the business of conducting a warehouse for the storage of merchandise for compensation. The commodities stored vary in kind, but generally are perishable food products consigned to merchants in Boston.

2. The issued capital stock of the taxpayer consists of 350 shares of the par value of $100 per share. During the years involved in this appeal, J. L. Kelso owned 348 shares, A. Walter Larkin one share, and Ray Larkin one share. J. L. Kelso and Walter Larkin devoted their entire time to the business of the taxpayer during the years 1919, 1920, and 1921.

3. The operations of the taxpayer are conducted at No. 1, Union Wharf, in a building leased from the Eastern Steamship Company. The rental paid for such business premises averaged more than $11,000 annually during the years in question. The nature of the business requires the services of laborers, who are paid wages that amount usually to more than $60,000 for each year. Salaries to officers and other operating costs, in addition to rents and wages, make up a total of operating expenses that average about $130,000 annually.

4. In the regular course of business, the taxpayer advances its customers substantial amounts for freight, drayage, and other charges against commodities consigned to it for storage. Money so advanced is always included in the first bill thereafter rendered to customers, and generally is repaid within thirty days from the date of its advance. The taxpayer charges its customers no interest on such advances and made no direct income therefrom.

5. The taxpayer receives merchandise for storage at any time, but bills its customers for services rendered only on the first of each month, and, in all cases, for a full month's service. This procedure results in the collection of about one-half its income in advance. Bills for storage service are not made for any specified amount of floor space or cubical space, but are in terms of the units of the

commodities stored. By this method the taxpayer is able to use all the space in its warehouse to the best advantage, both for itself and its customers.

6. Kelso, the president and manager of the taxpayer, has had more than thirty years' experience in the business of warehousing and storing perishable commodities. He holds a license from the Commonwealth of Massachusetts, authorizing him to conduct a storage warehouse. He gives his personal attention to all the details of his business, and oversees all the operations of the taxpayer.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

LANSDON: In this appeal the taxpayer asserts that the Commissioner is in error in denying its claim for classification as a personal-service corporation as defined in section 200 of the Revenue Act of 1918. In support of its contention, the taxpayer avers that its income is primarily ascribable to the activities of its principal stockholders; that such principal stockholders are themselves regularly engaged in the active conduct of its affairs, and that neither invested nor borrowed capital is a material income-producing factor.

The evidence adduced at the hearing proves that the principal stockholders are themselves regularly engaged in the active conduct of the affairs of the taxpayer. It is for the Board to determine, therefore, whether the income of the taxpayer may be ascribed primarily to such activities, and whether capital, either invested or borrowed, is an income-producing factor.

It is obvious that the business of conducting a storage warehouse can not be carried on without a warehouse. The taxpayer owns no such facility, but conducts its operations in a building which it leases from the Eastern Steamship Company and for which it pays a rental of about $1,000 per month. The taxpayer's counsel cited the *Appeal of Bryant & Stratton Commercial School, Inc.*, 1 B. T. A. 32, in the course of his argument, and contended that in the use of leased premises there is a direct parallel between that case and the instant appeal.

The Board is of the opinion that there is a very clearly marked distinction between the uses of capital by the Bryant & Stratton School and this taxpayer. Instruction is the principal service rendered by a school. Desks, maps, books, and even buildings are incidental, not essential. It was once said that Mark Hopkins on one end of a log in the woods and a student on the other end constituted a university. The building used by the taxpayer in the instant appeal is not a mere incident in its business, but is a necessary facility without which its operations are impossible. That building is used by virtue of a lease, and the leasehold is capital.

Several features of the business of the taxpayer clearly indicate the use of capital as a prerequisite to its operations, and therefore material in the production of its income. There is a weekly pay roll of more than $1,000 that has to be met. There are advances to pay freight bills and other charges against goods consigned for storage. There are insurance and operating expenses. The taxpayer asserts that all these payments are made out of current income, but the

record does not sustain this contention. The balance sheets of the taxpayer for the years 1919, 1920, and 1921 are in evidence and indicate a paid-in capital and surplus of something like $30,000, with only a very small investment in fixed assets. The office equipment and hand trucks which constitute the whole of the taxpayer's capital investments in tangible property do not exceed $5,000 in value. It is evident, therefore, that liquid invested capital in excess of $25,000 is available for business operations at all times.

The evidence shows that the average monthly receipts of the taxpayer for the three years in question exceeded $12,500, and that about one-half of such receipts was paid in advance for periods ranging from ten to fifteen days. Money received for services to be rendered in the future is instantly available for business operations requiring liquid capital. This taxpayer had the use, without interest, of several thousands of dollars of its customers' money at all times. Such cash payments for services to be rendered in the future, if used in business operations, are borrowed capital.

In the light of all the evidence the Board is of the opinion that capital is a material-income producing factor in this taxpayer's business, and it follows, therefore, that the principal stockholders are not primarily responsible for the income. Having failed to satisfy two essential requirements for personal-service classification, the taxpayer must be denied the relief prayed for in its petition.